IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAMES WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 9193 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| MANISHA PATEL, JUDY PRICE, and | ) | |
| CYNTHIA JONES, | ) | |
| | ) | |
| Defendants. | ) | |

### Memorandum Opinion and Order

Plaintiff James Williams, a pretrial detainee at the Cook County Jail, brought this suit under 42 U.S.C. § 1983 against Physician Assistant Manisha Patel, Nurse Judy Price, and Nurse Cynthia Jones in their individual and official capacities, alleging that they were deliberately indifferent to his medical needs in violation of the Due Process Clause of the Fourteenth Amendment. Defendants have moved for summary judgment. Doc. 43. The motion is granted.

### Background

"[A] district court is entitled to decide [a summary judgment] motion based on the factual record outlined in the [parties'] Local Rule 56.1 statements." *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (internal quotation marks and alterations omitted); *see also Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."); *Patterson v. Ind.*

*Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) ("[w]e have repeatedly held that the district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions"); *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005) ("we have ... repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1 ") (alterations omitted). Williams's status as a *pro se* litigant does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel") (citations omitted); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ( "[t]hough courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules"); *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("strictly enforcing Local Rule 56.1 was well within the district court's discretion, even though Wilson is a pro se litigant") (citations omitted); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("even *pro se* litigants must follow rules of civil procedure").

Consistent with the local rules, Defendants filed a Local Rule 56.1(a)(3) statement of undisputed facts along with their summary judgment motion. Doc. 43-1. Each substantive assertion of fact in the Local Rule 56.1(a)(3) statement cites evidentiary material in the record and is supported by the cited material. *See* N.D. Ill. L.R. 56.1(a) ("The statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). Also consistent with the local rules, Defendants

filed and served on Williams a Local Rule 56.2 Notice, which explains in detail the requirements of Local Rule 56.1. Doc. 44-1.

Although Williams filed a response to the summary judgment motion, Doc. 53, he did not file either a Local Rule 56.1(b)(3)(B) response to Defendants' Local Rule 56.1(a)(3) statement or a Local Rule 56.1(b)(3)(C) statement of additional facts. Accordingly, the facts set forth in Defendants' Local Rule 56.1(a)(3) statement are deemed admitted and constitute the entire factual record on which the summary judgment motion will be resolved. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Schrott v. Bristol–Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); *Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003). Those facts are as follows.

Williams was a pretrial detainee at the Cook County Jail. Doc. 43-1 at ¶ 1. He was taken into custody on October 14, 2011, and was treated for an abdominal gunshot wound at Stroger Hospital. *Id*. at ¶¶ 6-7. On October 19, 2011, Williams entered Cermak Health Services, the Jail's onsite medical facility. *Id*. at ¶¶ 7-8. Physician Assistant Patel, Nurse Price, and Nurse Jones were employed by Cermak. *Id*. at ¶¶ 2-4.

When Williams entered Cermak, his gunshot wound was "hyper granulating"; Williams believed that this meant that his wound was infected and that he was going to die, but he later learned that "hyper granulating" meant that his wound was healing. *Id*. at ¶ 9. On October 19,

the wound was clean and had good granulation tissue. *Id*. at ¶ 10. On October 20, Williams refused a dressing change. *Id*. at ¶ 11. Williams received dressing changes at Cermak on October 22, 23, 25, 26, 28, and 31. *Id*. at ¶¶ 13-14, 16-19. On October 21, 24, and 31, Williams saw a doctor and voiced no complaints about inadequate dressing changes. *Id*. at ¶¶ 12, 15, 19.

Williams remained at Cermak until November 1, when he was transferred to Division 10 of the Jail, a medical division with 24-hour nursing. *Id*. at ¶¶ 20-21. Dressing changes in Division 10 are performed at the dispensary during the morning shifts. *Id*. at ¶ 22. Inmates must sign in at the dispensary. *Id*. at ¶ 23. Williams' visits to Division 10's dispensary were primarily for dressing changes. *Id*. at ¶ 24. Williams could see a nurse by submitting a medical request slip, and he could get a dressing change by completing a health service request form, filing a grievance, or asking an officer. *Id*. at ¶¶ 26-27. On November 1, Williams saw a nurse for abdominal pain and constipation but did not complain about a lack of dressing changes. *Id*. at ¶ 25.

Williams received dressing changes on November 9, 12, 18, 21, 22, 23, 24, and 26. *Id*. at ¶¶ 28, 30, 33-38. On November 29, he signed in at the dispensary for a dressing change. *Id*. at ¶ 41. Williams met with a mental health provider on November 10, 14, 16, 17, 21, 22, 24, 27, and 28; at none of those visits did Williams complain about needing or not receiving dressing changes. *Id*. at ¶¶ 29, 31-32, 34-35, 37, 39-40. On November 22, he met with a doctor and did not complain about a lack of dressing changes. *Id*. at ¶ 35.

On December 5, 2011, Williams gave the Correctional Rehabilitation Worker a grievance (dated December 1, 2011) complaining that he did not receive regular dressing changes or adequate treatment for his wound since entering the Jail on October 19, 2011. *Id*. at ¶ 58; Doc.

43-3 at 9. Williams received dressing changes on December 1, 2, 3, 5, 6, 7, 8, 10, 11, 12, 13, 14, 16, 19, 20, 21, 22, 23, 24, 25, 27. Doc. 43-1 at ¶¶ 42-55. On December 12, 2011, Williams saw a doctor and did not complain about a lack of dressing changes. *Id*. at ¶ 51.

The court received Williams's complaint on December 27, 2011. Doc. 1. Williams received a response to the grievance on January 25, 2012. Doc. 43-1 at ¶ 58. Williams thus filed his complaint in federal court before receiving or appealing the grievance response. *Ibid*.

### Discussion

Defendants seek summary judgment on three grounds: (1) Williams failed to exhaust his administrative remedies; (2) Williams did not suffer a physical injury; and (3) Williams cannot demonstrate the elements of his deliberate indifference claim. The first two grounds are without merit, but the third warrants summary judgment.

### A. Exhaustion

Under the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), "[p]risoners must properly exhaust all available administrative remedies before pursuing claims, including § 1983 actions, in federal court." *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). "A prisoner must exhaust his grievances in accordance with prison procedural rules." *Ibid*.; *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "[W]hen the prisoner follows procedure but receives no response due to error by the prison, … the prisoner exhausted his administrative remedies." *Turley*, 729 F.3d at 650 n.3. "Exhaustion is an affirmative defense, with the burden of proof on the defendants." *Id*. at 650.

Williams gave his grievance to the Correctional Rehabilitation Worker on December 5, 2011; filed this lawsuit on December 27, 2011; and received a response to his grievance on

January 25, 2012. Defendants argue that Williams failed to properly exhaust his administrative remedies because he filed suit before receiving the response to his grievance. Doc. 44 at 3-4. As a general rule, an inmate fails to properly exhaust administrative remedies if he files suit before receiving a response to his grievance. *See Phillips v. Walker*, 443 F. App'x 213, 215 (7th Cir. 2011); *Ford v. Johnson*, 362 F.3d 395, 398-99 (7th Cir. 2004); *Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002). An exception applies where prison officials do not respond to the grievance in a timely manner. *See Towns v. Holton*, 346 F. App'x 97, 99 (7th Cir. 2009) (rejecting the defendants' exhaustion defense where the plaintiff did not receive a response to his grievances within the two-month response time set by the governing regulation).

The Jail's grievance rules provide that an inmate will receive a response to a standard grievance within fifteen days. Doc. 43-9 at 7 ("The CCSO [Cook County Sheriff's Office] shall have 15 days upon receipt of the grievance to determine whether it is sustained or not-sustained and assign a remedy, if no exceptions apply."). Williams did not receive a response to his grievance by December 20, 2011, within fifteen days of submitting the grievance to the Correctional Rehabilitation Worker. Williams's complaint was received by this court on December 27; the record is silent on when he mailed his complaint to the court, so drawing a reasonable inference in his favor, he mailed his complaint after the December 20 deadline for receiving a response had passed. Thus, on the summary judgment record, the court cannot conclude that Defendants met their burden of proving that Williams failed to exhaust the administrative remedies that were available to him.

Defendants maintain that because Williams's grievance was a healthcare grievance and not a standard grievance, the fifteen-day response rule did not apply. Doc. 54 at 5. The argument

-6-

fails to persuade. While the Jail's grievance rules do recognize a distinction between standard grievances and healthcare grievances, the rules do not say that healthcare grievances are exempt from the fifteen-day rule applicable to standard grievances. Doc. 43-9 at 6-13. If the deadline for responding to healthcare grievances is indeed more relaxed than the deadline for responding to standard grievances, that proposition is not established by the summary judgment record.

### B.      Physical Injury

The PLRA provides that "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Defendants argue that this provision defeats Williams's suit because he has not suffered physical injury. This argument misconstrues § 1997e(e). As the Seventh Circuit has explained, "physical injury is merely a predicate for an award of damages for mental or emotional injury, not a filing prerequisite for the federal civil action itself." *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003); *see also Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012). Thus, even assuming that Williams did not suffer physical injury, he would be precluded only from obtaining "compensatory damages for mental or physical injury; it would not preclude him from seeking "nominal and punitive damages," and thus would not defeat this suit. *Calhoun*, 319 F.3d at 940-41; *see also Thomas*, 697 F.3d at 614 (same); *Washington v. Hively*, 695 F.3d 641, 644 (7th Cir. 2012) (same); *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011) (same).

### C.      Deliberate Indifference

"In order to sustain a § 1983 claim for violation of [his] Fourteenth Amendment due process right to adequate medical care, [Williams] must show that: (1) [he] had an objectively

serious medical condition; (2) the defendants knew of the condition and were deliberately indifferent to treating [him]; and (3) this indifference caused [him] some injury." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Although Defendants argue otherwise, the court will assume that Williams's abdominal gunshot was an objectively serious medical condition. Still, Williams has not demonstrated that a reasonable jury could find for him on the second and third elements of his deliberate indifference claim.

With respect to the third element, causation, there is no evidence of record to support the conclusion that the alleged shortcomings in Defendants' treatment of Williams's wound caused him any injury. The record demonstrates that Williams received regular dressing changes from the time he entered the Jail in mid-October 2011 to the time he filed this suit in late December 2011. In October and December, his dressing was changed every day or every other day. Although Williams's papers are unclear, it would appear that his deliberate indifference claim focuses on the November time frame, when his dressing was changed less regularly.

A delay in treatment "may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011). "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Ibid*. Here, the summary judgment record—which, as noted above, is limited to the undisputed assertions in Defendants' Local Rule 56.1(a)(3) statement—provides no basis to conclude that Williams suffered any adverse effect or pain from the allegedly inadequate dressing changes in November (or in October or December). To the contrary, Williams did not complain about infrequent dressing changes when seeing a doctor on November 22, 2011, or during his multiple meetings with mental health professionals that

month.  And Williams admits that he "was able to get bandages, gauze, and saline solution to clean and change [his] dressing on his own."  Doc. 53 at 4.  Without any evidence of causation, Williams's deliberate indifference claim fails.  *See Gayton*, 593 F.3d at 624 ("in the rare instance that a plaintiff can proffer no evidence that a delay in medical treatment exacerbated an injury, … summary judgment [should] be granted on the issue of causation"); *Walker v. Peters*, 233 F.3d 494, 502 (7th Cir. 2000) (affirming summary judgment on a prisoner medical care claim where the plaintiff could not establish causation, reasoning: "The decisive factor … is that Walker has no evidence that he was injured by the defendants' refusal on some occasions to provide him Factor VIII.  Although it is true that the defendants admitted that a hemophiliac could be harmed by delays or refusals in providing Factor VIII, there is no evidence that Walker actually was harmed by these decisions.").

Williams's brief responds that his claim is not that the delays caused him *actual* harm, but that they increased his *risk* of harm.  Doc. 53 at 2 ("the defendants['] denial to change plaintiff[']s dressing as instructed could have caused more damages to plaintiff[']s injury therefore endangering plaintiff[']s overall health"); *id*. at 3-4 ("[Due to the] lack of cleaning and dressing changes, the chances for infection skyrocket[ed].  Fortunately, the plaintiff was able to get bandages, gauze, and saline solution to clean and change dressing on his own.").  Citing *Helling v. McKinney*, 509 U.S. 25 (1993), which recognized the viability of an inmate's claim that exposure to tobacco smoke increased his risk of injury, Williams contends that he "may indeed challenge conditions even without an injury if it can be proved that actions or conditions put[] [him] at serious risk in the future."  Doc. 53 at 3.  Williams is right that a deliberate indifference claim can proceed where "prison officials create[] a likelihood of future harm even if

no actual harm is presently manifested." *Devbrow v. Kalu*, 705 F.3d 765, 769 (7th Cir. 2013).

However, a plaintiff pursuing such a claim "must still prove to a degree of reasonable medical

certainty that *he himself* faces [an] increased risk" of "developing a serious medical condition."

*Henderson v. Sheahan*, 196 F.3d 839, 851-52 (7th Cir. 1999). The summary judgment record

includes no evidence that the less frequent dressing changes in November 2011 subjected

Williams to any sort of increased risk of injury. He therefore cannot proceed to trial on an

increased-risk theory. *See Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir.

2010) ("We often call summary judgment, the 'put up or shut up' moment in litigation, by which

we mean that the non-moving party is required to marshal and present the court with the evidence

she contends will prove her case. And by evidence, we mean evidence on which a reasonable

jury could rely.") (citations omitted).

　　　　With respect to the second element of his claim:

> [Williams] must show that [Defendants] acted with the requisite culpable
> state of mind. This inquiry has two components. [Defendants] must have
> subjective knowledge of the risk to the inmate's health, and [Defendants]
> also must disregard that risk. Evidence that [Defendants] acted negligently
> is insufficient to prove deliberate indifference. Rather, "deliberate
> indifference" is simply a synonym for intentional or reckless conduct, and
> that "reckless" describes conduct so dangerous that the deliberate nature of
> the defendant's actions can be inferred. Simply put, [Defendants] must both
> be aware of facts from which the inference could be drawn that a substantial
> risk of serious harm exists, and [they] must also draw the inference.

*Gayton*, 593 F.3d at 620 (citations and internal quotation marks omitted). The summary

judgment record contains no evidence that Defendants were actually aware of and consciously

disregarded Williams's (supposed) need for more frequent dressing changes. It follows that

Williams cannot meet the second element of his claim. *See Chambers v. Mitcheff*, 499 F. App'x

587, 592 (7th Cir. 2013) (affirming summary judgment on a prisoner medical claim where the plaintiff "failed to present evidence from which a jury might reasonably infer that [defendants] disregarded his serious medical needs"); *Rones v. Schrubbe*, 451 F. App'x 585, 587 (7th Cir. 2011) (same where the plaintiff "produced no evidence showing that the nurses knowingly disregarded a serious medical condition"); *Williams v. Guzman*, 346 F. App'x 102, 105-06 (7th Cir. 2009) (rejecting prisoner medical care claims, including a claim for delay in treatment, due to the plaintiff's failure to show that "a state official was deliberately, that is subjectively, indifferent" to his medical needs); *Duckworth v. Ahmad*, 532 F.3d 675, 679-82 (7th Cir. 2008) (affirming summary judgment where "there [was] no evidence that [the defendants] knew of and disregarded the [plaintiff's] risk of cancer").

The foregoing is sufficient to dispose of Williams's individual capacity claims. Williams's official capacity claims are the equivalent to a *Monell* claim against Cook County, which operates Cermak. *See Everett v. Cook Cnty.*, 655 F.3d 723, 725 (7th Cir. 2011); *Boyce v. Moore*, 314 F.3d 884, 887 n.1 (7th Cir. 2002). The official capacity claims therefore must satisfy the municipal liability requirements of *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). To state a *Monell* claim, the plaintiff must allege "that an official policy or custom not only caused the constitutional violation, but was the moving force behind it." *Ibid.* (internal quotation marks omitted). "An official policy or custom may be established by means of [1] an express policy, [2] a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or [3] through the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." *Rice ex*

*rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012); *see also Milestone v. City of Monroe*, 665 F.3d 774, 780 (7th Cir. 2011).

Williams's official capacity claims fail on two grounds. First, there is no evidence in the record that the allegedly inadequate dressing changes resulted from an official policy or custom—that is, from an express policy, a widespread and entrenched practice, or the actions of a final policymaker. Second, even if there were evidence of an official policy or custom, as noted above, the less frequent dressing changes caused Williams no injury. *See Davis v. Carter*, 452 F.3d 686, 692 (7th Cir. 2006) (to succeed on an official capacity claim, the plaintiff must demonstrate "that Cook County had a widespread custom or practice that caused a cognizable injury to" him).

### Conclusion

For the foregoing reasons, Defendants' summary judgment motion is granted.

November 13, 2013

_____
United States District Judge